# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

---

WALLACE A. MAREK *vs.* ZANOL PRODUCTS COMPANY.

Hampden.    February 2, 1937. — June 29, 1937.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Actionable Tort.    Privacy.*

Publication of the photograph and testimonial of a successful salesman
by his employer in popular magazines of general circulation was not
actionable where the salesman had consented to their publication in
the employer's trade journal and in "various circulars" for the em-
ployer's purposes, and had not objected to their publication in the
popular magazines until a long time after such publication had proved
to be disastrous to the salesman's business and his employment had
ended.

TORT.    Writ in the District Court of Springfield dated
May 8, 1934.

Upon removal to the Superior Court, the action was
tried before *Donnelly*, J., who ordered a verdict for the de-
fendant and reported the action for determination by this
court.

The case was submitted on briefs.

*L. C. Henin & P. E. Saks*, for the plaintiff.

*C. H. Beckwith*, for the defendant.

LUMMUS, J.   This report brings up the question whether the trial judge was in error in directing a verdict for the defendant.   The wrong alleged is the publication in various popular magazines of the picture of the plaintiff, with extracts from a letter written by him and certain facts about him.   The first count declares that this violated his right to privacy.   The second count alleges that it was a misuse of photographs and a letter given to the defendant for a different purpose.   There was evidence of the following facts.

The defendant is the subsidiary and selling agent of the American Products Company, a manufacturer of miscellaneous household and toilet preparations.   In 1921, when the plaintiff was fourteen years old, he began to buy goods from the defendant and to sell them from house to house in the neighborhood of Suffield, Connecticut, where he lived. The selling prices were fixed by the defendant.   The defendant had many similar "representatives" throughout the country, and was constantly seeking more.   The plaintiff prospered, and in a few years acquired a truck and a store which he used for the sale of the defendant's products.   In 1927 the plaintiff won the prize in a sales contest conducted by the defendant, and furnished his photograph and a letter for publication in a company magazine called the Zanol Hustler, which had a monthly circulation of twenty-five thousand copies, and also for use, to quote the defendant's words, "for other purposes in our advertising, to show other Zanol representatives and prospective representatives how successful you have been."

In February, 1930, the plaintiff won a prize of $1,500 in another similar contest.   He furnished the defendant with his photograph and a similar letter, dated February 13, 1930.   He was expressly told by letter that they would be used in the Zanol Hustler and in "various circulars," and they were so used.

But the defendant, in its endeavor to obtain new "representatives," also used the plaintiff's picture and a statement of his success, earnings and prizes, in various magazines of a general and popular character and of national circula-

tion, at various times between July, 1930, and August, 1932. In some of these advertisements appeared extracts from the plaintiff's letter of February 13, 1930. A typical appeal, signed by the president of the defendant, was this: "Here is a picture of 21 year old Wallace Marek who has often made $100 a week working for me. Send me your name and I will make you the very same offer that started him on the road to success."

The plaintiff says that he did not know that his picture and letter were to be used in these popular magazines until they appeared, when friends called them to his attention. Even then, there is no evidence that he made objection. But these advertisements, reaching the general public, turned out to be disastrous to his business. His former customers felt that he was too prosperous to need further help, and that his large earnings indicated excessive profits. In 1931 lack of business forced him to give up his store, although he continued to canvass from house to house until February, 1933. At that time he was sent by the defendant to various cities for training as a branch manager. In April, 1933, he was made branch manager at Trenton, New Jersey, but resigned after six weeks to "go back to my old territory as a dealer." He attributed his want of success as a manager to his defective early education.

Just how or when the plaintiff ceased to work for the defendant does not appear, but it appears that on December 29, 1933, he made claim for damages for the alleged wrongful use of his photograph and letter. It does not appear that he made any earlier objection.

We need not in this case discuss the existence or scope of the right of privacy in the absence of contract or of misuse of a plaintiff's property. *Thayer* v. *Worcester Post Co.* 284 Mass. 160, 163. *Ipswich Mills* v. *Dillon,* 260 Mass. 453. *Baker* v. *Libbie,* 210 Mass. 599. *Levyeau* v. *Clements,* 175 Mass. 376. *Pollard* v. *Photographic Co.* 40 Ch. D. 345. *Holmes* v. *Underwood & Underwood, Inc.* 225 App. Div. (N. Y.) 360. In the present case the plaintiff, in sending to the defendant his photograph and the letter of February 13,

1930, contemplated and consented to their use for the purposes of encouraging existing "representatives" and attracting new ones. He was told that they would be used not only in the Zanol Hustler but also in "various circulars." There is no denial that he knew of their use in one circular having a circulation of at least two hundred thousand copies a year, which was distributed to "representatives" and "to all persons who communicated with the defendant regarding employment as representatives." There is no suggestion that he ever complained of the publication in the popular magazines until more than two years after the unexpected injury to his business had compelled him to close the store and more than six months after he had ceased to serve the defendant as branch manager.

He wrote the letter of February 13, 1930, in response to a request, among other things, to tell the defendant "whether or not you would recommend the Zanol agency to people in other sections, as a money-making proposition." His letter of that date makes clear that he expected it to be used for the procurement of new "representatives," for he said that he recommended the "Zanol proposition" to "any man or woman who want to get ahead who want to enjoy the comforts of life, as well as have a good bank account." There is nothing to show that at the time his consent did not extend to the publication in the popular magazines, the injurious effect of which apparently was not foreseen, as well as to the issuance broadcast of a multitude of circulars. The distinction which the plaintiff now makes appears to be a refinement never thought of at the time.

*Judgment for the defendant on the verdict.*