ULLIAN THEMO *vs.* THE NEW ENGLAND NEWSPAPER
PUBLISHING COMPANY.

JOSEPH DELFINO *vs.* SAME.

Suffolk.   November 9, 1938. — May 27, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Actionable Tort.   Privacy.*

Discussion by LUMMUS, J., of the right of privacy.

No invasion of a plaintiff's right of privacy, if he had any in the circumstances, was shown by allegations in a declaration merely that without the plaintiff's permission the defendant took and published in a prominent place in his newspaper a photograph showing the plaintiff in conversation with a police officer.

TWO ACTIONS OF TORT.   Writs in the Municipal Court of the City of Boston dated March 20, 1935.

The cases were removed to the Superior Court and were reported by *Hanify*, J.

*J. A. Daly*, for the plaintiffs.

*E. J. Brandon*, (*G. May* with him,) for the defendant.

LUMMUS, J.   After sustaining a demurrer to the second count of the declaration in each case, a judge of the Superior Court reported the cases.   The second count was as follows: "Now comes the plaintiff and says that on or about March 24, 1934, the defendant by its agents and servants without the permission of the plaintiff took a photograph of the plaintiff; that the defendant publishes a newspaper called the Boston American having a wide circulation in Boston and its suburbs; that on said March 24, 1934, the defendant without the consent of the plaintiff published said photograph on the first page of its newspaper; that said photograph showed the plaintiff in conversation with a captain of police of the city of Cambridge; that as a result of the publication of said photograph the right of privacy of the plaintiff was invaded; that the plaintiff suffered greatly from mental distress caused by said publication and has suffered great loss, for all of which he claims damages."

Ever since the publication in 1890 of an article by Samuel D. Warren and Louis D. Brandeis (4 Harv. Law Rev. 193), the so called right of privacy has been under discussion. The authors argued that the recognized right to privacy with respect to unpublished manuscripts, music, and works of art, private letters, photographs taken on behalf of the person represented, and trade secrets, constituted a halting approach to the general right of privacy for which they contended. They recognized that the lives, the acts and the personal characteristics of men may become the subjects of legitimate public interest. They said, "The general object in view is to protect the privacy of private life, and to whatever degree and in whatever connection a man's life has ceased to be private, before the publication under consideration has been made, to that extent the protection is to be withdrawn." (Page 215.)

Great difficulty exists in defining a right of privacy that will protect individuals against abuse and yet will not infringe the right of the public and the press to discuss personalities. In Winfield, Law of Tort (1937), 669, it is said, "It is only *offensive* invasion of privacy that is really objectionable and that ought to be made unlawful. 'Offensive' is a vague term, but Judges could be safely entrusted with the task of deciding whether there were evidence enough of such offensiveness to go to the jury. There is no need to stop the propagation of news — even silly news — about people, or to stifle curiosity — even vulgar curiosity — about a neighbour's affairs. But there is a difference . . . between ordinary inquisitiveness and unscrupulous abuse of a person's privacy for advertising or other purposes."

In a number of jurisdictions a right of privacy has been legally recognized to some extent. *Pavesich* v. *New England Life Ins. Co.* 122 Ga. 190. *Brents* v. *Morgan,* 221 Ky. 765. *Rhodes* v. *Graham,* 238 Ky. 225. *Kunz* v. *Allen,* 102 Kans. 883. *Flake* v. *Greensboro News Co.* 212 N. C. 780. *Munden* v. *Harris,* 153 Mo. App. 652. *Melvin* v. *Reid,* 112 Cal. App. 285. *Metter* v. *Los Angeles Examiner,* 35 Cal. App. (2d) 304. *Edison* v. *Edison Polyform & Manuf. Co.* 3 Buch. 136. In a number of other jurisdictions any common law right of

privacy has been denied. *Roberson* v. *Rochester Folding Box Co.* 171 N. Y. 538. *Kimmerle* v. *New York Evening Journal, Inc.* 262 N. Y. 99. *Henry* v. *Cherry & Webb*, 30 R. I. 13. *Atkinson* v. *John E. Doherty & Co.* 121 Mich. 372. *Hillman* v. *Star Publishing Co.* 64 Wash. 691. *Hodgeman* v. *Olsen*, 86 Wash. 615. *Judevine* v. *Benzies-Montanye Fuel & Warehouse Co.* 222 Wis. 512, 106 Am. L. R. 1443. See also *Baumann* v. *Baumann*, 250 N. Y. 382; *Somberg* v. *Somberg*, 263 N. Y. 1. The question has been raised in Massachusetts but never decided. *Thayer* v. *Worcester Post Co.* 284 Mass. 160, 163. *Marek* v. *Zanol Products Co.* 298 Mass. 1, 3. In New York a right of privacy is given limited recognition by statute. *Rhodes* v. *Sperry & Hutchinson Co.* 193 N. Y. 223. *Binns* v. *Vitagraph Co. of America*, 210 N. Y. 51. *People* v. *Robert R. McBride & Co.* 159 Misc. (N. Y.) 5. *Lahiri* v. *Daily Mirror, Inc.* 162 Misc. (N. Y.) 776. *Kline* v. *Robert M. McBride & Co.* 170 Misc. (N. Y.) 974. The question whether a right of privacy ought to be recognized by the law has been much discussed in textbooks and legal periodicals.[1]

Modern cases have made it possible to reach certain indecent violations of privacy by means of the law of libel, on the theory that any writing is a libel that discredits the plaintiff in the minds of any considerable and respectable class in the community though no wrongdoing or bad character is imputed to him. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 33. Accordingly, it may be found libellous to publish a photograph which represents the plaintiff as being ridiculously though unbelievably malformed (*Burton* v. *Crowell Publishing Co.* 82 Fed. [2d] 154); to exhibit a wax figure representing the plaintiff, who had been acquitted of murder by shooting, with a gun near him (*Monson* v. *Tussauds, Ltd.* [1894] 1 Q. B. 671); to publish

---

[1] Harper, Torts (1933) § 277. Cooley, Torts (4th ed. 1932) § 135. O'Brien, 2 Colum. L. R. 437. Larremore, 12 Colum. L. R. 693. Bohlen, 50 Harv. L. R. 731. Kacedan, 12 Boston Univ. L. R. 353, 600. Green, 27 Ill. L. R. 237. A. N. Hand, 45 Am. L. Reg. 745. Ragland, 17 Ky. L. J. 85. Fitzpatrick, 20 Georgetown L. J. 134. Dickler, 70 U. S. Law Rev. 435. Leovy, 13 So. Cal. L. R. 81. Adams, 39 Am. L. Rev. 37. Clemons, 14 Marquette L. R. 193. Pound, 29 Harv. L. R. 640. Long, 33 Yale L. J. 115, 122. Winfield, 47 Law Quart. Rev. 23. Anon. 33 Ill. L. R. 87. Anon. 81 U. of P. L. R. 324.

of a woman that she had been ravished (*Youssoupoff* v. *Metro-Goldwyn-Mayer Pictures, Ltd.* 50 T. L. R. 581); to publish of a man that his sister had been arrested for larceny (*Merrill* v. *Post Publishing Co.* 197 Mass. 185, 190); to impute to a woman the publishing of the details of her love affair (*Karjavainean* v. *Macfadden Publications, Inc.* 305 Mass. 573); to impute to a dramatic actress an appearance in burlesque in scanty costume (*Louka* v. *Park Entertainments, Inc.* 294 Mass. 268); to impute to a woman the giving of a testimonial for a brand of whiskey (*Peck* v. *Tribune Co.* 214 U. S. 185); to impute to a prominent man the giving of a testimonial for a patent medicine (*Foster-Milburn Co.* v. *Chinn,* 134 Ky. 424); or to impute to an amateur athlete consent to the use of his name and likeness in advertising chocolate. *Tolley* v. *J. S. Fry & Sons, Ltd.* [1931] A. C. 333. In *Roberson* v. *Rochester Folding Box Co.* 171 N. Y. 538, where a majority denied any common law right of privacy, perhaps a result in favor of the plaintiff might have been reached, as in the *Tolley* case, on the ground that the use of the likeness of a young woman in widespread advertising imputed to her consent to such immodest publicity. See *Kunz* v. *Allen,* 102 Kans. 883. Likewise the result in favor of the plaintiff in *Pavesich* v. *New England Life Ins. Co.* 122 Ga. 190, where the defendant falsely imputed to the plaintiff the giving for publication of a statement of his fortunate condition because of having ample life insurance, might perhaps have been rested upon libel instead of upon invasion of privacy.

The fundamental difference between a right to privacy and a right to freedom from defamation is that the former directly concerns one's own peace of mind, while the latter concerns primarily one's reputation, although the damages may take into account mental suffering. *Markham* v. *Russell,* 12 Allen, 573. *Chesley* v. *Tompson,* 137 Mass. 136. *Pion* v. *Caron,* 237 Mass. 107, 111. Another important difference is that truth could not justify an invasion of a legally recognized right of privacy, although ordinarily truth is a defence to libel. G. L. (Ter. Ed.) c. 231, § 92. In *Lyman* v. *New England Newspaper Publishing Co.* 286

Mass. 258, a newspaper suggested in a column of gossip that the plaintiffs, husband and wife, were unhappy in their married life. That suggestion, it was held, could be found a libel. But even if true that suggestion was an outrageous invasion of privacy, from the standpoint of decency if not from that of law. In *Melvin* v. *Reid*, 112 Cal. App. 285, the plaintiff had been a prostitute, and had been acquitted of murder. She reformed, married, and for eight years led a blameless life. Then the defendant produced a motion picture truly depicting her evil past. She was held entitled to recover for the invasion of her right of privacy. See also *Mau* v. *Rio Grande Oil, Inc.* 28 Fed. Sup. 845; *Binns* v. *Vitagraph Co. of America,* 210 N. Y. 51.

The present cases do not require us to decide whether any right of privacy is recognized by the law of this Commonwealth. If any exists, it does not protect one from having his name or his likeness appear in a newspaper when there is legitimate public interest in his existence, his experiences, his words, or his acts. The declarations are silent as to the occasion for the publication in question. Whether the newspaper described the occasion or not, does not appear. For all the declarations disclose, the plaintiffs may have lost a large sum of money by a robbery of great public interest, and when photographed were consulting the captain of police about apprehending the robbers. The counts in question stated no case unless the plaintiffs under all conceivable circumstances had an absolute legal right to exclude from a newspaper any photograph of them taken without their permission. If every person has such a right, no newspaper could lawfully publish a photograph of a parade or a street scene. We are not prepared to sustain the assertion of such a right. In each case the entry will be (*Keljikian* v. *Star Brewing Co.* 303 Mass. 53)

> *Order sustaining demurrer to second count*
> *affirmed.*
> *Judgment for defendant on second count.*