**John W. NEFF, an Individual, Plaintiff,**

v.

**TIME, INC., a corporation, Defendant.**

**Civ. No. 75–983.**

United States District Court, W. D. Pennsylvania.

Jan. 27, 1976.

William Shaffner, Pittsburgh, Pa., for plaintiff.

Frank L. Seamans, Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

This diversity action was removed from the Court of Common Pleas of Allegheny County, Pennsylvania, where a complaint had been filed by John W. Neff, the plaintiff, against Time, Inc., the defendant. The complaint was verified by Neff and alleged that the defendant is the owner of a magazine known as Sports Illustrated sold weekly throughout Pennsylvania; that Neff is a private citizen employed in education; that in its issue of August 5, 1974, the defendant's magazine used Neff's picture without his prior knowledge and consent to illustrate an article entitled "A Strange Kind of Love;" that the photograph shows Neff with the front zipper of his trousers completely opened implying that he is a "crazy, drunken slob," and combined with the title of the article, "a sexual deviate." Neff alleges that the unauthorized publication and circulation of his picture to illustrate the article invaded his right of privacy and subjected him to public ridicule and contempt, injured his personal esteem and the esteem of his profession, reflected on his character, diminished his high standing reputation among his family, friends, neighbors and business associates, destroyed his peace of mind and caused him severe mental and emotional distress to his damage in excess of $5,000, amended to aver in excess of $10,000.

The defendant filed a motion for summary judgment and attached eight affidavits in which the defendant admitted that an authorized employee took Neff's photograph and five others selected it for publication. No counter-affidavits were filed by Neff. There is only one disputed issue of fact: Neff alleges that defendant has used his picture without his prior knowledge and consent; the defendant asserts that his picture was taken for and published in Sports Illustrated with his full knowledge and consent.

The undenied facts contained in affidavits filed by defendant establish beyond peradventure that the picture was taken with Neff's knowledge and with his encouragement; that he knew he was being photographed by a photographer for Sports Illustrated and thereby impliedly consented to its publication. Since Neff did not respond by counter-affidavits, in our opinion the motion should be granted. Rule 56(e) Fed.R. Civ.P.

The affidavits establish that the photograph was taken about 1:00 o'clock P.M. November 25, 1973, while Neff was present on a dugout with a group of fans prior to a professional football game at Cleveland between the Cleveland Browns and the Pittsburgh Steelers.[1] The photographer was on the field intending to take pictures of the Steeler players as they entered the field from the dugout. Neff and the others were jumping up and down in full view of the fans in the stadium; they were waving Steeler banners and drinking beer; they all seemed to be slightly inebriated. One of the group asked the photographer for whom he was working and was told Sports Illustrated, whereupon the group began to act as if a television camera had been put on them; as the pictures were taken they began to react even more, screaming and howling and imploring the photographer to take more pictures. The more pictures taken of the group, the more they hammed it up. All were aware that the photographer was covering the game for Sports Illustrated. There were no objections;

1. One affidavit states the number of fans to be from eight to twelve; another states the number to be five or six.

they wanted to be photographed. Thirty pictures were taken of the group on the dugout from different angles.

During the period from July through December, 1973, this photographer took 7,200 pictures pursuant to his assignment to cover the Steelers. As part of his duty he edited the pictures and submitted one hundred to the magazine for selection by a committee of five employees. After several screenings of the thirty pictures of the group on the dugout, the committee selected Neff's picture with his fly open. Although Neff's fly was not open to the point of being revealing, the selection was deliberate and surely in utmost bad taste; subjectively, as to Neff, the published picture could have been embarrassing, humiliating and offensive to his sensibilities.[2] Without doubt the magazine deliberately exhibited Neff in an embarrassing manner.

It appears that the pictures were taken to illustrate a book being written by one Blount about the Steeler fans, and three excerpts from the book were published in the magazine. Only three pictures, including Neff's, accompanied the article of August 5, 1974. The title to this article "A Strange Kind of Love" could convey to some readers a derogatory connotation. Neff is not mentioned by name in the article; the Steeler-Cleveland game of November, 1973, is not mentioned in the article;[3] Neff's photograph was not selected on the basis of its relationship to that game. The caption appearing adjacent to the photograph reads:

"In the fading autumn Sundays at Three Rivers, the fans joined the players in mean pro dreams."

Three Rivers is the name of the stadium in Pittsburgh. Neff's photograph was selected because "it represented the typical Steeler fan: a rowdy, strong rooter,

much behind his team, having a good time at the game," and "it fitted in perfectly with the text of the story." (See affidavit of Richard M. Gangel, Art Director for Sports Illustrated).

It seems to us that art directors and editors should hesitate to deliberately publish a picture which most likely would be offensive and cause embarrassment to the subject when many other pictures of the same variety are available. Notwithstanding, "[t]he courts are not concerned with establishing canons of good taste for the press or the public." *Aquino v. Bulletin Company*, 190 Pa.Super. 528, 154 A.2d 422, 425 (1959).

■ The right of privacy is firmly established in Pennsylvania despite the fact that its perimeter is not yet clearly defined and its contours remain amorphous. *Vogel v. W. T. Grant Company*, 458 Pa. 124, 327 A.2d 133 (1974).

From *Vogel* it seems that Pennsylvania follows the rules promulgated by the Restatement (Second) of Torts §§ 652 B through E (Tent. Draft No. 13, 1967); that invasion of privacy is actionable under any one of four distinct, but coordinate, torts. These are concisely paraphrased in *Goldman v. Time, Inc.*, 336 F.Supp. 133, 136 (N.D.Cal.1971) as follows:

"1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

2. Public disclosure of embarrassing private facts about the plaintiff.

3. Publicity which places the plaintiff in a false light in the public eye.

4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness. Prosser on Torts at 837 et seq. (3d ed. 1964); Prosser, 'Privacy,' 48 Cal. L.Rev. 383, 389 (1960)."

**2.** Counsel for defendant stated at argument that the remainder of the thirty photographs had been destroyed, but it is unlikely that any other member of the group had their zippers down.

**3.** Cf. *Murray v. N. Y. Magazine Co.*, 27 N.Y.2d 406, 318 N.Y.S.2d 474, 267 N.E.2d 256 (1971), judgment for plaintiff reversed.

See also § 652 A, Restatement (Second) of Torts (Tent. Draft No. 21, 1975).[4]

Plaintiff's claim is based on "appropriation of name or likeness" and "publicity given to private life," i. e., 4 and 2, *supra*. Plaintiff's brief, page 5.

As to 4, *supra*, § 652 C of the Restatement (Second) of Torts (Tent. Draft No. 21, 1975) states:

"One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for unreasonable invasion of his privacy."

It is settled that this section is not applicable when a person's picture is used in a non-commercial article dealing with an accident, or the picture of a bystander at a political convention, or parade, *Murray v. N. Y. Magazine Co.*, 27 N.Y.2d 406, 318 N.Y.S.2d 474, 267 N.E.2d 256 (1971), or generally in the reporting of news. We think actions of excited fans at a football game are news as is a story about the fans of a professional football team. As stated in *Gautier v. Pro-Football, Inc.*, 278 App.Div. 431, 435, 106 N.Y.S.2d 553, 557 (1st Dept. 1951), *aff'd* 304 N.Y. 354, 107 N.E.2d 485 (1953): "Once an item has achieved the status of newsworthiness, it retains that status even when no longer current." See also *Jenkins v. Dell Publishing Company*, 251 F.2d 447 (3rd Cir. 1958); *Murray v. N. Y. Magazine Co., supra*. The fact that Sports Illustrated is a magazine published for profit does not constitute a "commercial appropriation of Neff's likeness." The fact that Neff was photographed in a public place for a newsworthy article, entitles the defendant to the protection of the First Amendment. *Time, Inc. v. Hill*, 385 U.S. 374, 397, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); *New York Times Co. v. Sullivan*, 376 U.S. 254, 266, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The tort described in 4, *supra*, and § 652 C Restatement (Second) of Torts is not applicable to the facts in this case.

As to 2, *supra*, § 652 D of the Restatement (Second) of Torts (Tent. Draft No. 13, 1967) states:

"One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy."

In the 1975 draft of the Restatement (Second) of Torts § 652 D states:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for unreasonable invasion of his privacy, if the matter publicized is of a kind which:

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public."

The article about Pittsburgh Steeler fans was of legitimate public interest; the football game in Cleveland was of legitimate public interest; Neff's picture was taken in a public place with his knowledge and with his encouragement; he was catapulted into the news by his own actions; nothing was falsified; a photograph taken at a public event which everyone present could see, with the knowledge and implied consent of the subject, is not a matter concerning a private fact. A factually accurate public disclosure is not tortious when connected with a newsworthy event even though offensive to ordinary sensibilities. The constitutional privilege protects all truthful publications relevant to matters of public interest. *Jenkins v. Dell Publishing Co., supra*, family of victim of a murder; *Samuel v. Curtis Pub. Co.*, 122 F.Supp. 327 (N.D.Cal.1954), plaintiff attempting to dissuade woman hanging on bridge from committing suicide; *Berg v. Minneapolis Star & Tribune Co.*, 79 F.Supp. 957 (Minn.1948), courtroom; *Gill v. Hearst Pub. Co.*, 40 Cal.2d 224, 253 P.2d 441 (1953), plaintiff embracing his wife in a market place; *Jacova v. Southern Radio & Television Co.*, 83 So.2d 34 (Fla.1955), cigar store raid; *Themo v.*

4. The Law of Torts, by W. L. Prosser, 4th ed. 1971, pp. 802–818.

*New England Newspaper Pub. Co.*, 306 Mass. 54, 27 N.E.2d 753 (1940), police station; *Murray v. N. Y. Magazine Co., supra*, parade; *Humiston v. Universal Film Mfg. Co.*, 189 App.Div. 467, 178 N.Y.S. 752 (1919), street; *Meetze v. Associated Press*, 230 S.C. 330, 95 S.E.2d 606 (1956), article reporting birth to 12 year old child; See The Law of Torts, by W. L. Prosser, Fourth ed. 1971 at pp. 811, 817. *Cf. Virgil v. Time, Inc.*, 527 F.2d 1122 (9th Cir. 1975). The tort described in 2, *supra*, and § 652 D of the Restatement (Second) of Torts, *supra*, is not applicable to the facts in this case.

■ Of course, we are concerned that Neff's picture was deliberately selected by an editorial committee from a number of similar pictures and segregated and published alone. If his picture had appeared as part of the general crowd scene of fans at a game, even though embarrassing, there would be no problem. Although we have some misgivings, it is our opinion that the publication of Neff's photograph taken with his active encouragement and participation, and with knowledge that the photographer was connected with a publication, even though taken without his express consent, is protected by the Constitution.

An appropriate order will be entered.