**Stanley J. MIASKIEWICZ**
v.
**Arlene LETOURNEAU**

**No. 37147**

Superior Court
Commonwealth of Massachusetts

**August 17, 1981**

**Gerald Cohen,** counsel for plaintiff
**Richard Clarey,** counsel for defendant

## MEMORANDUM AND ORDER ON THE MOTION OF THE DEFENDANT TO DISMISS

In 1977, the plaintiff Stanley J. Miaskiewicz (Miaskiewicz) initiated a groundless libel action against the defendant. When his action came to trial, Miaskiewicz's testimony "was a tissue of fabrications which was knowingly undertaken, which tended to baffle the inquiry at hand, which degraded and obstructed the administration of justice and which interfered with the capacity of the Court and Jury to determine the rights of the parties according to law." **Miaskiewicz v. Commonwealth,** 1980 Mass. Adv. Sh. 719, quoting from the findings of the trial judge in **Miaskiewicz v. LeTourneau,** Middlesex Superior Court No. 77-1169. "He called twelve witnesses, the trial lasted eleven days, and the cost of jurors' pay was $2,240.00. Seventy-one exhibits were admitted in evidence, and fifty-two more were marked for identification. Most of the trial time was devoted to the introduction of evidence of the truth of what the plaintiff claimed to be false and defamatory. The petitioner not only lied willfully under oath, but enlisted judicial resources in a baseless, false and wasteful cause. His conduct constituted both an affront to the court's dignity and a perversion of the court's purposes as an institution for just resolution of legitimate disputes." **Miaskiewicz v. Commonwealth, supra** at 724. The jury found against Miaskiewicz in the Middlesex Superior Court libel action.

Now Miaskiewicz has commenced this action against the same defendant, Arlene LeTourneau (LeTourneau), for an alleged invasion of his privacy. LeTourneau moves to dismiss upon the ground that the adverse decision in the prior libel action between the same parties precludes the assertion of the present claim.

"Judgment in a prior action precludes subsequent litigation when the two cases involve the same parties, final judgment on the merits by a court of competent jurisdiction, and the same cause of action. **Franklin v. North Weymouth Co-op. Bank,** 282 Mass. 275, 280 (1933). **Wright Mach. Corp. v. Seaman-Andwall Corp.,** 364 Mass. 683, 688 (1974)." **Bradford v. Richards,** 1981 Mass. App. Ct. Adv. Sh. 647-649. "The law of res judicata now reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." Restatement (2nd) Judgments sec. 61, Comment a, at 142 (Tent. Draft No. 5, 1978). See, Vestal, **Res Judicata,** 47 S. Cal. L. Rev. 357 (1947). In this case, there is no suggestion that the present parties are not the same as those involved in the prior adjudication nor is there any question but that the Middlesex Superior Court had jurisdiction to try the libel action. The only issue is whether the present invasion of privacy action is "the same cause of action" as the earlier libel action. **Bradford v. Richards, supra** at 651 teaches that:

> It is necessary to inquire into the commonness of the facts upon which the successive actions rest and whether the evidence required to establish a claim or defense in the second action was required to establish a claim or defense in the first one. Restatement (2nd) Judgments sec. 61(2) and Comment a (Tent. Draft No. 5, 1978).

Miaskiewicz argues first that the required analysis cannot be accomplished through a motion to dismiss, confined as it is to the adequacy of his complaint in the second action standing alone. While the Appeals Court, in **dicta,** recently addressed a claim splitting argument upon review of a motion to dismiss without apparent concern for the procedural context in which the issue had been raised, **Smith v. Caggiano,** 1981 Mass. App. Ct. Adv. Sh. 1101, 1106-1107, this Court is inclined to believe that the issue of claim splitting cannot be adequately raised upon

a motion to dismiss. In the present case, however, LeTourneau has attached to her answer a certified copy of the complaint in the first action and it is thus open to the Court to treat the motion to dismiss as a motion for summary judgment, Mass. R. Civ. P. 12(b), and proceed to compare the two complaints in an attempt to resolve the issue.[1]

The second cause of action alleges at least two, and perhaps three, matters not raised by the complaint in the first action. Both actions allege conduct amounting to slander and libel. The second, however, alleges that LeTourneau and her agents kept Miaskiewicz "under surveillance for an unreasonable length of time",[2] and subjected him to threatening telephone calls. It is also alleged that LeTourneau published "private matters violating the ordinary decency of society". The general allegation, without any supporting facts, that LeTourneau intruded on Miaskiewicz's physical solitude is too vague or insubstantial to support his claim. **Smith v. Caggiano, supra** at 1104 ("If, among many specific facts alleged in a complaint, there are none which flush out a particular skeletal fact essential to making out a claim, a court can infer that the vital facts do not exist and must treat the broad assertion as too vague or insubstantial"). Moreover, the approach to calculating damages is different in the two actions and, while truth is a defense to a libel action, it plays no part in an action for invasion of privacy. **Themo v. New England Publishing Co.**, 306 Mass. 54 (1940). These differences, says Miaskiewicz, prevent judgment from being taken against him in this second action upon the ground of claim splitting.

This Court does not agree. See, the dissenting portion of the opinion by Clark, J. in **Sidis v. F. R. Pub. Corp.**, 113 F. 2d 806, 811 (2d Cir. 1940), arguing that assertion of an invasion of privacy action barred later assertion of an action of libel. While **Bradford v. Richards, supra** held that bringing a claim based upon a purported will did not prevent a second claim on a quantum meruit theory, the following cases all held the second action asserted barred on the ground of claim splitting:

**Machintosh v. Chambers,** 285 Mass. at 597 (earlier action on note barred second action for money lent); **Ratner v. Rockwood Sprinkler Co.,** 340 Mass. at 776 (tort action arising out of malfunction of sprinkler system barred contract action based on same failure of sprinkler system); **Fassas v. First & Trust Co,** 353 Mass. at 629-630 (previous action to enjoin foreclosure of mortgages and declare mortgages void barred second action alleging lack of validity of the same mortgages because of the mortgagee's failure to comply with statutes regulating interest rates); **Dwight v. Dwight,** 371 Mass. 424, 428-429 (1976) (successive claims based on failure to disclose facts bearing on value of shares of stock in a newspaper); **Saraceno v. Peabody,** 1 Mass. App. Ct. 834, 834-835 (1973) (multiple attacks on implementation of an urban renewal project); **Boyd v. Jamaica Plain Co-op Bank)** 7 Mass. App. Ct. 153, 164-165 (1979) (class action on theories of escrow and fiduciary relationship

---

[1] Even this method is not wholly satisfactory in the age of 'notice pleading'. It is not possible to say with absolute certainty precisely what evidence will be adduced in the section action. Nevertheless, the general contours of the two complaints are clearly delineated and this Court believes that it is appropriate to proceed. Indeed, if it is necessary to try the second case in every instance before one can determine whether the claim has, in fact, been split, the whole idea of claim preclusion as a rule of finality will have to be abandoned.

[2] The allegation that Miaskiewicz was also subjected to an harrassing investigation adds nothing to the matter already alleged.

to recover interest on tax escrow deposits with banks bars subsequent suit to achieve same result based on theory of unjust enrichment) (.)

**Bradford v. Richards, supra** at 651-652. Thus, despite the somewhat variant areas available for evidentiary exploration in the second case, this Court concludes that

> the present trend is to see (a) claim in factual terms and to make it coterminus with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

Restatement (2nd) Judgments sec. 61, Comment a (Tent. Draft No. 5, 1978). This comment is codified in sec. 61 of the Restatements itelf which provides:

> (T)he claim extinguished (by a valid and final judgment rendered in a prior action) includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose . . . What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations (.)

This Court agrees[3] and concludes that the rule of claim preclusion in Massachusetts is not narrower than that stated in the Restatement. Tested by this standard, the Court concludes that both actions are closely related in time, space, origin, and motivation, and, given the substantial evidentiary overlap, would have formed a convenient trial unit had these latter claims arising out of the transaction with LeTourneau been brought in the first action. Accordingly, while the issue is not free from doubt, summary judgment will enter for the defendant LeTourneau upon the ground that Miaskiewicz had impermissibly split his claim and is thus precluded from pressing this second action. The Court is confirmed in its conclusion as to the present case by the eloquent exposition of Professor Geoffrey C. Hazard, Jr., in his Introduction to the Restatement (2nd) of Judgments.

> (F)inality attaches not because the courts are infallible but because they are inevitably fallible. Adjudication is a procedure by which a disinterested agency—the judge or jury—is authorized to impose a binding resolution of a controversy over legal rights. Arriving at such a resolution requires either a determination of the facts or a particularization of the law as it applies to facts, or both. If there were infallible personages who could discern law and facts in a way that engendered universal assent, the process of adjudication would be socially unnecessary. Legal disputes could simply be remanded to the oracles. It is because such personages do not exist that the offices of judge and

---

[3] While jurisdictions differ on how they will define "cause of action" for purposes of preclusion, Developments in the Law - Section 1983 and Federalism, 90 Harv. L. Rev. 1133, 1331 n. 5 (1977), it is precisely because most jurisdictions follow the Restatement rule quoted above

jury and a system of procedure are created by law, supplying by fiat a practical substitute for perfect intelligence. Justice Jackson's observation about the Supreme Court is true of the judicial system as a whole: "We are not final because we are infallible, but we are infallible only because we are final." **Brown v. Allen,** 344 U.S. 441, 540 (1953).

Finality, then, is the service rendered by the courts through operation of the law of **res judicata.** The finality in contemplation includes the immediate finality that is imposed on the litigation itself. It includes also imposition of finality on the dispute that gave rise to the litigation so far as it is within the means of legal process to do so. In a still broader sense, the law of **res judicata** cumulatively reinforces the authoritativeness of the law itself. It holds that at some point arguable questions of right and wrong for practible purposes simply cannot be argued any more. It compels repose. In substituting compulsion for persuasion, the law of **res judicata** trenches upon freedom to petition about grievances and autonomy of action, very serious concerns in an open society. Yet such a society requires a system of order to maintain its open structure.

Indefinite continuation of a dispute is a social burden. It consumes time and energy that may be put to other use, not only of the parties, but of the community as a whole. It rewards the disputatious. It renders uncertain the working premises upon which the transactions of the day are to be conducted. The law of **res judicata** reduces these burdens even if it does not eliminate them, and is thus the quintessence of the law itself: a convention designed to compensate for man's incomplete knowledge and strong tendencies to quarrel.

The convention concerning finality of judgments has to be accepted if the idea of law is to be accepted, certainly if there is to be practical meaning to the idea that legal disputes can be resolved by judicial process.
Restatement (2nd) Judgments Introduction at 12-13. (Tent. Draft No. 7, 1980). Accordingly, summary judgment will enter for the defendant LeTourneau.

**William G. Young**
**Justice of the Superior Court**

that there is presently such a lively dispute concerning whether a federal civil rights claim which could have been, but was not, raised in a prior state court proceeding can later be raised in the federal courts. Compare, **Lovely v. LaLiberte,** 489 F. 2d 1261, 1263 (1st Cir. 1974), **cert. denied,** 417 U.S. 1038 (1974) and **Robbins v. District Court of Worth County, Iowa,** 592 F. 2d 1015, 1018 (8th Cir. 1974) with **Lombard v. Board of Education,** 502 F. 2d 631, 635 (2d Cir. 1974) **cert. denied,** 420 U.S. 976 (1975) and **New Jersey Education, Assoc. v. Burke,** 579 F. 2d 764, 774 (3rd Cir. 1978), **cert. denied** 439 U.S. 894. See, Theis, **Res Judicata in Civil Rights Act Cases: An Introduction to the Problem,** 70 NW. L. Rev. 859 (1976); Note, **The Preclusive Effect of State Judgments on Subsequent 1983 Actions,** 78 Colum. L. Rev. 610, 613 (1978); Averitt, **Federal § 1983 Actions After State Court Judgments,** 44 U. Colo. L. Rev. 191, 195 (1972). See generally, Currie, **Res Judicata: Neglected Defense,** 45 U. Chi. L. Rev. 317 (1978).