Donald B. RINSLEY, M.D., Plaintiff,

v.

Anthony BRANDT and William Morrow and Company, Inc., a corporation, Defendants.

No. 76–132–C5.

United States District Court, D. Kansas.

Dec. 15, 1977.

John E. Wilkinson, Topeka, Kan., for plaintiff.

Donald Patterson, Topeka, Kan., for William Morrow & Co., Inc.

Grant M. Glenn, Topeka, Kan., Sam L. Colville, Kansas City, Mo., for Brandt.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

In 1975, defendant William Morrow and Company, Inc. [hereinafter referred to as "Morrow"] published a book entitled "Reality Police" which was authored by defendant Brandt and contained many references to plaintiff Rinsley which were less than complimentary. The publication of this book resulted in plaintiff's filing of this action, which originally contained three causes of action: (1) libel, (2) invasion of privacy, and (3) violation of civil rights protected by 42 U.S.C. §§ 1985 and 1986.

An idea of the claims presented in the complaint may be garnered from the following paragraphs of said complaint:

8. In said book, authored by Defendant Brandt and published by Defendant Morrow, and entitled "Reality Police", the Plaintiff and his activities as a licensed physician and certified medical specialist and as a member of the professional staff of a hospital for children located in Topeka, Kansas, were discussed in detail.

9. Said discussion of Plaintiff and his professional activities connected with the treatment of patients was replete with falsehoods, distortions, and errors of fact, all of which ascribed to Plaintiff conduct, characteristics and conditions incompatible with the proper conduct of his lawful profession; these falsehoods, distortions and errors of fact included, but were not limited to the following assertions:

(a) that Plaintiff practiced his profession in an unauthorized and pejorative fashion;

(b) that Plaintiff practiced his profession in a manner based upon his own

subjective views, ideas and theories—hence, in a manner which bore no relationship to known or accepted professional standards and knowledge;

(c) that Plaintiff practiced his profession, and conducted himself in such manner as to be accountable and responsible to no one, including his superiors, supervisors, and professional colleagues in the hospital where he practiced, as well as the duly constituted authorities of the State of Kansas;

(d) that, as a result and effect of Plaintiff's administrative control over subordinate professional and paraprofessional staff members of the hospital where he practiced, said professional and paraprofessional staff members were caused, induced and expected to interact with and treat hospital patients and their families in a manner similar to that falsely ascribed to Plaintiff, i. e., cruelly, sadistically, unethically, irresponsibly, unaccountably, and outside the bounds of known and accepted professional standards and knowledge.

In particular, plaintiff takes offense at a case history mentioned in the book which involved a young girl. The book, according to the complaint, states that " 'Rinsley's staff drove her crazy' (p. 226) and contributed to her death by neglect in her care and treatment." Another passage of the book asks: "What does it take to put a stop to such a man? How many more children must die?"

This action now comes before the Court upon three motions: (1) Defendant Morrow's motion for dismissal and/or partial summary judgment (Doc. # 20); (2) Defendant Brandt's motion for summary judgment (Doc. # 40); and (3) Defendant Morrow's motion for summary judgment (Doc. # 51).

By Order of December 2, 1977, this Court dismissed plaintiff's third cause of action based on 42 U.S.C. §§ 1985 and 1986. Therefore, only the libel and invasion of privacy claims remain before the Court.

## LIBEL

Defendants lodge three contentions against plaintiff's libel claim: (1) the claim is barred by the statute of limitations; (2) plaintiff is a "public official" or "public figure"; and (3) punitive damages are not recoverable in a libel action. We dismiss plaintiff's libel claim on the basis of the statute of limitations defense and therefore need not address the other two arguments.

■ The parties agree that the controlling statute of limitations relative to the libel claim is K.S.A. § 60–514, which states:

The following actions shall be brought within one (1) year. (1) An action for libel or slander.

This action was filed on August 17, 1976. The complaint alleges that plaintiff discovered the statements made about him in "Reality Police" "on or about" August 20, 1975. Thus, if the statute of limitations did not begin to run until plaintiff discovered his claim, this action would be timely. Unfortunately for plaintiff, the discovery accrual rule is not applicable.

There is no authority for the proposition that a cause of action governed by K.S.A. § 60–514 does not accrue until discovered. An examination of K.S.A. § 60–513(a)(3) indicates that the Kansas legislature will apply the discovery accrual rule when it desires to do so. Such a decision is within the province of the legislature. *McCoy v. Wesley Hospital & Nurse Training School*, 188 Kan. 325, 331, 362 P.2d 841 (1961). The one year statute of limitations for libel and slander in Kansas begins to run upon "publication", not discovery. *Vaughan v. Hornaman*, 195 Kan. 291, 298, 403 P.2d 948 (1965). *See also* 50 Am.Jur.2d *Libel and Slander* § 390, pp. 911–12 (1970); 53 C.J.S. *Libel and Slander* § 156, p. 238 (1948).

The time of "publication" relative to a book is when the book is released for sale in accord with trade practice. 50 Am.Jur.2d, *supra*, at § 394, p. 915; Annot., 42 A.L.R.3d 807, 828–829 (1972). The facts in this case are undisputed that "publication" of the book in question was effected before August 1, 1975—more than one year before

the filing of this action. [See Landis affidavit].

To bolster his position that the discovery accrual rule should be followed, plaintiff cites *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradsteet, Inc.*, 61 Ill.2d 129, 334 N.E.2d 160 (1975) and *Kelley v. Rinkle*, 532 S.W.2d 947 (Tex.1976). Both these cases involved claims of false credit reporting. The courts in those cases applied the discovery accrual rule as a matter of policy, noting that frequently publication in those situations would not be discovered by a plaintiff until long after a statute of limitations had run. Thus, those cases are easily distinguishable from a situation, such as we have here, where the alleged defamation emanates from a mass media source. In *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., supra*, 334 N.E.2d at 161, the Supreme Court of Illinois recognized:

> It has been generally held that in defamation cases the cause of action accrues and the statute of limitation begins to run on the date of publication of the defamatory material. [cites omitted]

After explaining the rationale for applying the discovery rule to false credit reporting cases, the court stated:

> We would note that cases involving defamation by credit reporting agencies can be readily distinguished from those involving alleged defamations through so-called mass media publication. In claimed libels involving, for example, magazines, books, newspapers, and radio and television programs, the publication has been for public attention and knowledge and the person commented on, if only in his role as a member of the public, has had access to such published information. In addition and more importantly, a credit reporting agency does not enjoy the constitutional protections given mass-media publications. *Grove v. Dun & Bradstreet, Inc.* (3d Cir. 1971), 438 F.2d 433.

The same distinction between defamation by credit reporting and defamation by mass media was made in *Kelley v. Rinkle, supra*, 532 S.W.2d at 949:

> We would not apply the discovery rule where the defamation is made a matter of public knowledge through such agencies as newspapers or television broadcasts.

Failing to convince us that the discovery rule should be adopted as the test for accrual of a cause of action, plaintiff's only hope is to persuade us that a new cause of action should arise with the sale of each separate book. Plaintiff does argue for the "multiple publication" rule over the "single publication" rule.

The majority rule, it appears to us, is clearly that the "single publication" rule, under which any single integrated publication, such as an edition of a book, is treated as a unit giving rise to only one cause of action. Annot. *supra*, 42 A.L.R.3d 807. The best authority in Kansas, which is admittedly none too good, is the prognostication of a Connecticut federal court that Kansas, if squarely faced with the question, would adopt the "single publication" rule. *Fouts v. Fawcett Publications*, 116 F.Supp. 535, 537 (D.Conn.1953). We join in this prognostication.

Plaintiff's briefs contain long policy arguments assailing the short statute of limitations and arguing that every plaintiff should be given a "realistic opportunity" to file a lawsuit to vindicate his claims. The argument against the short statute of limitations falls upon the Court's deaf ears; such an argument is appropriately directed only at the Kansas legislature. Similarly, plaintiff's argument that every plaintiff should be given a "realistic opportunity" to file suit rings hollow, for this plaintiff admittedly sat on his claim for just three days short of one year before filing suit. Plaintiff had every opportunity to file a timely action in this case.

We therefore conclude that the libel claim presented in plaintiff's complaint is barred by the statute of limitations and must be dismissed.

## PRIVACY

Turning to plaintiff's privacy claim, defendant alleges the following contentions:

(1) plaintiff is a "public figure" who cannot bring an action for invasion of privacy; (2) this action is barred by the statute of limitations; and (3) punitive damages are not recoverable in such an action.

### 1. Public Figure

■ Discussion of the "public figure" argument will require some background on the law of privacy. Kansas law does recognize the right against invasion of privacy. The Kansas Supreme Court has adopted the standards set forth in the American Law Institute's Restatement of the Law Second, Torts, Tentative Draft No. 13, § 62, which is taken substantially from the formulation set forth in Prosser's article *Privacy*, 48 Cal.L.Rev. 383 (1960). *Froelich v. Adair*, 213 Kan. 357, 516 P.2d 993, 995–996 (1973). This formulation includes four types of invasion of privacy:

§ 652B. INTRUSION UPON SECLUSION

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable man."

§ 652C. APPROPRIATION OF NAME OR LIKENESS

"One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."

§ 652D. PUBLICITY GIVEN TO PRIVATE LIFE

"One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy."

§ 652E. PUBLICITY PLACING PERSON IN FALSE LIGHT

"One who gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy."

Despite plaintiff's attempts to apply numerous portions of § 652, we conclude that the only relevant portion is subsection E, the so-called "false light" privacy claim. False light privacy has not yet been expressly addressed in the Kansas case law.[1]

■ As noted above, defendants argue that plaintiff is a public official or public figure and therefore has waived his right to privacy. *See generally* Annot., 57 A.L.R.3d 16 (1974). However, a false light privacy claim does not require invasion of something secret to plaintiff. Prosser, *supra*, 48 Cal.L.Rev. at 407. Therefore, a false light claim would not necessarily be completely barred by the fact that plaintiff has achieved some public prominence. The key to a false light privacy claim is the falsehood, not any element of secrecy. Therefore, the courts have consistently treated false light privacy in essentially the same way that they have treated defamation. Hill, *Defamation and Privacy Under the First Amendment*, 76 Colum.L.Rev. 1205, 1207; Bloustein, *The First Amendment and Privacy: The Supreme Court Justice and the Philosopher*, 28 Rutgers L.Rev. 41, 91 (1974); Comment, *Privacy: The Search for a Standard*, 11 Wake Forest L.Rev. 659 (1975). The Kansas Supreme Court has expressly noted the applicability of defamation principles to the field of privacy. *Rawlins v. Hutchinson Publishing Company*, 218 Kan. 295, 543 P.2d 988, 992 (1975). In *Hotchner v. Castillo-Puche*, 551 F.2d 910, 912 (2d Cir. 1977), it was held that the same standard for determining whether a public figure may recover for defamation applies to an invasion of privacy suit.

Because of the interrelationship between certain principles of defamation law with the concept of privacy, we must examine both areas to adequately evaluate defendants' claims that (1) plaintiff is a public

---

1. In *Rawlins v. Hutchinson Publishing Company*, 218 Kan. 295, 543 P.2d 988, 991 (1975), the court noted the following: "(So far, it seems, all our cases which might have been categorized as 'publicity placing person in false light' under § 652E have been cast by the parties in the more traditional molds of libel or slander.)"

official or public figure, and (2) that this fact bars this claim.

The modern line of cases interpreting the interrelationship between the First Amendment and the law of defamation began with *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In that case the Supreme Court held that a libelous statement about a public official was not actionable unless the falsehood was made with malice.

The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice— that is, with knowledge that it was false or with reckless disregard of whether it was false or not. [376 U.S. at 279–280, 84 S.Ct. at 726.]

The next significant case was *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), which shed some light on exactly who is a "public official" who must show malice to recover for defamation:

It is clear, therefore, that the public official designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs. [383 U.S. at 85, 86 S.Ct. at 676.]

*Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) is especially notable because it involved a false light privacy claim. That decision applied the *New York Times* requirement of malice in a false light privacy context and extended its application so that it covered private individuals involved in matters of "public interest" as well as public officials. Thus, *Hill* added public interest analysis to the status analysis of the *New York Times* case.

In *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the public interest analysis of *Hill* was carried back into the libel field as the *New York Times* requirement of malice was extended to cases involving public *figures*

as well as public officials. A public figure was defined essentially as one who both commands continuing public interest and has sufficient media access to counter the effects of defamation.

The public interest analysis approach was carried to its farthest extent in *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), which was another defamation case. That opinion applied the *New York Times* rule to private persons under certain circumstances:

If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not voluntarily choose to become involved. [403 U.S. at 43, 91 S.Ct. at 1819.]

The rule of *Rosenbloom* did not last long, for in 1974 it was impliedly overruled in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). This opinion rejected the public interest analysis as inadequate for determining whether the *New York Times* rule should apply. The opinion signalled a return to the status analysis of the public official/public figure standard. The *Gertz* opinion clarified somewhat the definition of the term public figure:

That designation may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions. [418 U.S. at 351, 94 S.Ct. at 3012.]

The recent case of *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976), held that a defamed person is not a public figure simply because the media deem her newsworthy. The opinion by Justice Rehnquist implied that only a *legiti-*

*mate* public interest was relevant to the public figure determination. This in turn implies a return to the public interest analysis of *Rosenbloom*, but the opinion specifically stated that *Gertz* had substituted status analysis for public interest analysis.

In *Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974) and *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Supreme Court had opportunity to determine whether the *Gertz* shift away from public interest analysis in the libel area would be extended to the privacy area, thus overruling the *Hill* decision. In neither case did the Supreme Court avail itself of this opportunity.

One commentator has offered this summary of the present state of the law in libel:

Thus, at the present time, media defendants cannot be held for defamation of public officers or public figures except for misconduct that is willful or reckless (the *Sullivan* [New York Times] rule); and cannot be held liable for defamation of private persons, or of public persons in their private capacities, except upon a showing of "fault," which probably is satisfied by proof of negligence (the *Gertz* rule). [*Hill, supra*, 76 Colum.L.Rev. at 1212]

The important question remaining to be answered, and which is relevant to the ultimate resolution of this action is whether *Gertz* or *Hill* applies in the privacy context for evaluating whether or not plaintiff must show malice in order to recover. There appears to be considerable difference of opinion on the subject.

In a concurring opinion in *Cox Broadcasting Corp. v. Cohn, supra*, 420 U.S. at 498 n. 2, 95 S.Ct. 1029, 1048, Justice Powell noted that the *Gertz* opinion's abandonment of the public interest standard "calls into question the conceptual basis of *Time, Inc. v. Hill*." Further, Justice Stewart's remarks in the opinion in *Cantrell v. Forest City*

*Publishing Company, supra*, 419 U.S. at 250–251, 95 S.Ct. 465 have been interpreted as supporting the observation that the *Gertz* standard may apply in the privacy area. Lehmann, *Triangulating the Limits on the Tort of Invasion of Privacy*, 3 Hastings Const.L.Q. 543, 593 (1976). Others have also concluded that *Gertz* will ultimately replace *Hill* in the false light cases. *Hill, supra*, 76 Colum.L.Rev. at 1274; Phillips, *Defamation, Invasion of Privacy, and the Constitutional Standard of Care*, 16 Santa Clara L.Rev. 77, 99 (1975).[2]

This Court concludes that because of the strong similarity between a false light claim and a defamation claim, the *Gertz* rule will replace the *Hill* rule in the area of false light privacy. Therefore, we must focus on plaintiff's status, and not upon the public interest, in determining whether plaintiff must demonstrate malice in order to recover upon his invasion of privacy claim.

*Public Official.* At the relevant times, plaintiff was Director of the Children's Section at Topeka State Hospital and Associate Clinical Professor of Psychiatry at the University of Kansas School of Medicine. Both before and after the writing of this book, plaintiff has worked exclusively at public medical institutions. Further, plaintiff has done studies made possible in part by grants from the State of Kansas. When viewed in light of the case law, we think that these public connections are sufficient to render plaintiff a public official in light of the *Rosenblatt* definition.

In *Rosenblatt*, a former supervisor of a county recreation area who was appointed by and responsible to three county commissioners was determined to be a public official. In *Adey v. United Action for Animals*, 361 F.Supp. 457 (S.D.N.Y.1973), *aff'd*, 493 F.2d 1397 (2d Cir.), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974), a research scientist employed by NASA and involved in preparation for a space flight by

2. Other commentators have argued that *Hill*, not *Gertz*, should prevail in the privacy area. Lehmann, *supra*, 3 Hastings Const.L.Q. at 594;

Comment, *supra*, 11 Wake Forest L.Rev. at 664.

a monkey was held to be a public official. And in *Hutchinson v. Proxmire*, 431 F.Supp. 1311, 1327 (W.D.Wis.1977), plaintiff was determined to be a public official on these grounds: (1) he was director of research at Kalamazoo State Hospital; (2) he was dealt with by federal agencies who funded his research; and (3) he held himself out as president of a nonprofit corporation that purported to act in the public interest.

In light of the case law, we believe it safe to conclude that plaintiff held "a position in government . . . [with] such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it." *Rosenblatt v. Baer, supra*, 383 U.S. at 86, 86 S.Ct. at 676.

*Public Figure.* As noted earlier, the controlling definition of the term public figure is contained in the *Gertz* opinion. While we hold that plaintiff is not a public figure for all purposes, there are grounds for the conclusion that he is a person who has been drawn into a particular public controversy, becoming a public figure for a limited range of issues.

Plaintiff considers himself "nationally recognized as an expert in the diagnosis and treatment of adolescent children." The record indicates that plaintiff has written extensively in the area of child diagnosis and treatment, publishing over 30 articles or treatises. Plaintiff has appeared in "Who's Who in the Midwest", "Leaders in American Science", and "American Men and Women of Science."

Plaintiff admits that other experts in the field disagree with his theories and methods of treatment, and it appears that this controversy has recently resulted in litigation. *See Rinsley v. Frydman*, 221 Kan. 297, 559 P.2d 334 (1977).

In *Hutchinson v. Proxmire, supra*, 431 F.Supp. at 1327, plaintiff was held to be a public figure on the basis that (1) he has long been involved with publicly-funded research; (2) he had solicited grants for his research; (3) he had published widely in the area; (4) his research had received local press coverage; and (5) there was an element of public interest in the expenditure of public funds. Most of these factors also apply to the plaintiff in this action who is, for purposes of the range of public issues surrounding the mental health field, a public figure.

As noted earlier, we have concluded that the *Gertz* emphasis on status analysis should be extended to overrule the *Hill* emphasis on public interest analysis in the privacy field. Despite this conclusion, the element of public interest still remains an important factor in the determination of who is a public official or a public figure. Every defamation case from *New York Times* to *Gertz* involved issues of public interest and was concerned with the public's interest in having access to information. Phillips, *supra* 16 Santa Clara L.Rev. at 92. Further, a reading of the case law since *Gertz*, including that authored by the Supreme Court as well as that by lower courts, still indicates that public interest analysis is far from irrelevant. To the extent that the public interest is still a factor to be considered, our conclusion that the *New York Times* malice requirement should apply to this case is strongly buttressed, for there can be no denying the important public interest in the field of mental health. *See O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *United Medical Laboratories v. Columbia Broadcasting System*, 404 F.2d 706, 711 (9th Cir. 1968), *cert. denied*, 394 U.S. 921 (1969) (noting public interest in conditions affecting public health); *Goldman v. Time, Inc.*, 336 F.Supp. 133 (N.D.Cal.1971).

In summary, at the relevant times plaintiff was a public figure as well as a public official. Plaintiff occupied a public position, spent public funds, and received public research grants. Plaintiff is involved in a field of extreme public interest that is not without controversy. While plaintiff has not waived his right to keep private details of his life secret, he cannot shelter from public scrutiny his administration of a public position in a field of critical public interest. A public official has no right to privacy as to the manner in which

he conducts his office. *Rawlins v. Hutchinson News Publishing Co., supra*, 543 P.2d at 993.

■ Plaintiff simply cannot be allowed to shelter his work completely from public scrutiny. However, plaintiff does have the right to be protected from any falsehoods that accompany public scrutiny. Plaintiff cannot shelter his professional work from the public light. However, plaintiff can sue those who, acting with malice, place plaintiff in a false light before the public.

■ Because plaintiff has adequately alleged malice in his second cause of action, this portion of the complaint cannot be dismissed. Plaintiff's burden at trial, however, will be to prove malice, not mere negligence or some lesser degree of fault.

### 2. Statute of Limitations

■ Next, we turn to defendants' argument that the privacy aspect of this complaint is barred by the statute of limitations, as was the libel claim.

Defendants, in support of this position, cite three cases. First, defendants cite *Khaury v. Playboy Publications, Inc.*, 430 F.Supp. 1342, 1345 (S.D.N.Y.1977), which applied the single publication rule to invasion of privacy claims arising out of mass communications. Even if we accepted this rule, it would not bar this action. The single publication rule goes to when the cause of action accrues, not which particular statute of limitations applies. In this case, we conclude that the appropriate statute of limitations for an invasion of privacy claim is K.S.A. § 60–513(a)(4), the two-year "tort catch-all" provision for actions "for injury to the rights of another, not arising on contract, and not herein enumerated."

Defendants also cite *Briscoe v. Reader's Digest Association*, 4 Cal.3d 529, 93 Cal. Rptr. 866, 483 P.2d 34, 44 (1971), and *Kappellas v. Kofman*, 1 Cal.3d 20, 81 Cal.Rptr. 360, 459 P.2d 912, 921 n. 16 (1969), two cases which concluded that false light privacy was so similar to defamation that the same procedural prerequisites should apply to each. This Court must admit that it harbors some sympathy for the position that a false light privacy claim is so similar to a defamation claim that it seems contradictory to bar one by the use of the statute of limitations defense, yet allow the other to proceed.

There can be no doubt that the overlap noted above between the torts of defamation and invasion of privacy occurs most noticeably in the false light type of privacy claim. Lehmann, *supra*, 3 Hastings Const. L.Q. at 546, n. 17. It has been argued that the false light invasion of privacy "in both its remedies and its rationale, belongs with defamation as its unacknowledged but not illegitimate offspring." Gerety, *Redefining Privacy*, 12 Harv.Civ.Rights-Civ.Lib.L.Rev. 233, 258 (1977). Thus, we have some hesitation in barring a libel claim because of the statute of limitations, but allowing a false light claim to proceed which arose out of the identical facts and must have applied to it the same standards which govern the barred libel claim.

This anomaly, however, is just the result we must reach, for the Kansas Supreme Court has taken the position that defamation and invasion of privacy are separate torts. In *Froelich v. Adair, supra*, 516 P.2d at 996 the Kansas Supreme Court noted:

Invasion of privacy and defamation are separate and distinct torts even though they share some of the same elements and often arise out of the same acts. The first is a cause of action based upon injury to plaintiff's emotions and his mental suffering; the second is a remedy for injury to plaintiff's reputation.

*See also Munsell v. Ideal Food Stores*, 208 Kan. 909, 494 P.2d 1063, 1075 (1972), *citing Themo v. New England Newspaper Pub. Co.*, 306 Mass. 54, 27 N.E.2d 753 (1940); *Brink v. Griffith*, 65 Wash.2d 253, 396 P.2d 793 (1964).

Thus, because in Kansas false light privacy is recognized as a tort separate and distinct from libel for which no specific statute of limitations has been created, we conclude that the aforementioned two-year provision applies and that the privacy claim in this suit was timely filed.

### 3. Punitive Damages

Finally, we turn to defendants' argument that punitive damages should not be allowed for a false light privacy claim. This argument is clearly contrary to Kansas law. In *Monroe v. Darr*, 221 Kan. 281, 559 P.2d 322, 326 (1977), the Court held:

> The general rule is that punitive damages may be recovered for an invasion of the right of privacy where the defendant has acted with malice. (62 Am.Jur.2d, Privacy, § 47; *Santiesteban v. Goodyear Tire & Rubber Co.*, [5th Cir., Fla., 1962] 306 F.2d 9; *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076; *Hinish v. Meier & F. Co.*, 166 Or. 482, 113 P.2d 438; *Summit Loans, Inc. v. Pecola*, 265 Md. 43, 288 A.2d 114.)

Prosser has noted that punitive damages may be awarded in invasion of privacy cases upon the same basis as in other tort actions. 48 Cal.L.Rev., *supra* at 409.

Thus, defendants' only hope is to argue that the First Amendment somehow precludes the granting of punitive damages in false light cases involving mass communications. It has, in fact, been argued that the trend toward eliminating punitive damages in defamation cases should also apply to privacy cases involving communication. Phillips, *supra*, 16 Santa Clara L.Rev. at 102.

Because the Kansas law so clearly allows punitive damages, and because the Supreme Court's view as to punitive damages in privacy cases seems completely muddled [Lehmann, *supra*, 3 Hastings Const.L.Q. at 586–587], we conclude that punitive damages are allowable if malice is proved. Such a holding should not run afoul of the *Gertz* case, should that opinion's statements as to punitive damages be extended to the privacy area.

IT IS THEREFORE ORDERED that plaintiff's first cause of action premised upon a libel theory be, and is hereby, dismissed.

IT IS FURTHER ORDERED that defendants' motions for dismissal or summary judgment as to plaintiff's second cause of action based upon an invasion of privacy claim be, and are hereby, overruled and denied.

IT IS SO ORDERED.