MEMORANDUM AND ORDER
 

 THEIS, District Judge.
 

 This is a defamation action brought under Kansas law. Jurisdiction is based on diversity of citizenship. The defendants are Osborne Publishing Company, Inc., which publishes the weekly
 
 Osborne County Farmer,
 
 Sandra Trail, a reporter and editor of the newspaper, the City of Osborne, Kansas, and Floyd Bose, Osborne’s Chief of Police. The matter is before the court on motions for summary judgment brought by the defendants.
 

 1. Uncontroverted Facts
 
 [1]
 

 On or about September 5, 1992, a Dodge Daytona owned by the plaintiff, Jim Pfannenstiel, was stolen from the premises of Bohm’s Garage, plaintiffs place of employment. Officer Kim Rothenberger of the Osborne City Police Department investigated the theft. A Michael J. Cantrell
 
 [2]
 
 was found with the car and other stolen items in Arkansas and was arrested on previous charges arising there.
 

 Osborne Police Chief Floyd Bose gave information concerning the theft to Sandra Trail of the
 
 Osborne County Farmer.
 
 Bose testified in deposition that he is certain he correctly told Trail that the car was stolen from Pfannenstiel. Bose testified that he did not reveal the identity of the suspect. Trail testified in deposition that she did not remember the words Chief Bose used to tell her about the automobile theft. She testified that by the end of the conversation, she was certain Pfannenstiel had stolen the car from his employer’s premises. She recalled that Jim Pfannenstiel was the only name given to her and she remembered asking him about whether he was from Arkansas because Pfannenstiel is a common name in the Hays, Kansas, area.
 

 After talking to Chief Bose, Trail wrote the following, which was printed in the September 10,1992, issue of the
 
 Osborne County Farmer:
 

 According to Osborne Police Chief Floyd Bose, a 1984 Dodge Daytona was apparently taken from Bohm’s garage Saturday night by an employee, Jim Pfannenstiel. Also taken were a Ruger pistol, tools and $200.
 

 The car, along with the pistol and tools, were found Monday in Fulton County, Ark., and Pfannenstiel was arrested by authorities there on previous charges. Local authorities may extradite him after he faces charges in Arkansas.
 

 The local investigation, Bose said, was conducted by Officer Kim Rothenberger.
 

 On the day of the publication, Trail learned of the error and a correction was placed on the Farmer’s Telenews telephone line.
 

 The front page of the next issue of the
 
 Farmer,
 
 issued on September 17, 1992, included a correction which stated, in part:
 

 A story in last week’s paper incorrectly reported the theft of a stolen car from Bohm’s garage in the Industrial Park.
 

 Instead of being stolen by Jim Pfannenstiel as stated, the ear, a Dodge Daytona, was owned by Pfannenstiel. The car was located in Salem, Ark., in the possession of Michael Joe Cantrell who was taken into custody.
 

 The
 
 Osborne County Farmer
 
 staff apologizes for the mistake and the problems it caused Pfannenstiel and anybody else involved.
 

 
 *1500
 
 The issue also contained a piece, voluntarily written by Trail, entitled “Anatomy of a Mistake.” In that document Trail apologized to Pfannenstiel. Trail wrote that she had misunderstood the information presented to her by Bose, for which she took complete responsibility. Trail wrote: “Jim Pfannenstiel was put through needless pain and anxiety. I cannot forgive myself for having caused that, even if it was unintentional.” She did note, however, that the mistake never would have occurred had the police department allowed her to read the police report. Apparently, the Osborne Police Department consistently denies media requests for copies of its reports.
 

 Pfannenstiel contends he has suffered damage to his reputation and mental anguish as a result of the erroneous article. There is no evidence, however, that plaintiff has undergone any treatment for medical or mental problems related to this incident. Likewise, there is no evidence that plaintiffs employment was adversely affected. Plaintiff retained his friends and social acquaintances. He frequented the same public establishments that he had before.
 

 Some time after the incident at issue in this case, plaintiff moved to Burlington, Colorado, and started a business in Colby, Kansas, with Gerald “Buddy” Potts.
 
 [3]
 
 Neither plaintiff nor Potts could testify to any business or customers they have lost as a result of the article.
 

 The plaintiff listed a number of witnesses who, he said, could testify about the damage to his reputation. With certain exceptions detailed below, each of these witnesses testified that they did not believe the article when they read it, and they thought no less of plaintiff as a result of reading the article. Several testified further that they do not know of anyone who believed the article. Danny Williams testified that he did not even know whom the article was discussing, but his opinion of plaintiff was not lowered as a result of the article. Linda Streit testified that she was confused by the article, but was told within hours of reading it that it was in error. Her opinion of plaintiff did not change as a result of the article, and she does not believe his reputation in the community has been damaged.
 

 Plaintiff’s business partner testified that he believes some people think less of the plaintiff after the article was published. He was unable, however, to identify any such people. He claims to have overheard portions of other people’s conversations over coffee and donuts. Potts could only name two people he heard discuss the plaintiff in connection with the article. They were Duane Spears and Bob SeheUinger. However, each testified in deposition that he did not believe the article when he read it. Schellinger, in addition to some other witnesses, testified about teasing plaintiff about the article, but plaintiff was upset and did not respond with good humor.
 

 Plaintiff testified in deposition that he had never spoken with anyone who had believed the September 10 article and had encountered no one who thought less of him because of the article. Plaintiff testified that several people mentioned the article to him in jest. Plaintiff has lost no income in the past and expects to lose no income in the future as a result of the article.
 

 In response to the motion for summary judgment, plaintiff submitted the affidavits of five Osborne citizens. Each affidavit stated that the affiant had read the September 10 article and believed upon reading it that Pfannenstiel had stolen a car. Each affiant stated further that he/she believed substantial damage was done to plaintiff’s reputation as a result of the article. However, at deposition, three of the affiants testified that they did not know plaintiff before the article was published and either did not know his reputation in the community or knew him to be of good reputation both before and after the publication. Another testified that she knew the article was in error at the time she read it. She also was unaware of Pfannenstiel’s
 
 *1501
 
 reputation in the community. Furthermore, she was aware of only one person who had believed the article, and that person did not know who Pfannenstiel was. The fifth affiant’s deposition reveals that although he heard others discussing the article, he did not know whether or not they had believed it.
 

 Plaintiff has also presented the expert testimony of Daryl Moen, a journalism professor at the University of Missouri. Professor Moen testified in deposition that Sandra Trail did not ask sufficient questions of Chief Bose to verify the information he had given her. In his opinion, she failed to follow standard journalistic practices. He opined further that this failure constitutes reckless disregard for the truth. Moen defined reckless disregard as “not following basic journalistic practices in cases where you could cause damage to a person’s reputation.” (Moen deposition at 19).
 

 2. Standards for Summary Judgment
 

 The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion “show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). A principal purpose “of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses____”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court’s inquiry is to determine “whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
 

 The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment “against a party who fads to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.”
 
 Celotex,
 
 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to “support its motion with affidavits or other similar materials
 
 negating
 
 the opponent’s claim.”
 
 Id.
 
 at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial.
 
 Celotex,
 
 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim.
 
 Anderson,
 
 477 U.S. at 254, 106 S.Ct. at 2513.
 

 3. Defamation
 

 “The tort of defamation includes both libel and slander. The elements of the wrong include [1] false and defamatory words [2] communicated to a third person [3] which result in harm to the reputation of the person defamed. A corporation may be hable for the defamatory utterances of its agent which are made while acting within the scope of his authority.”
 
 Luttrell v. United Telephone System, Inc.,
 
 9 Kan.App.2d 620, 620-21, 683 P.2d 1292 (1984),
 
 ajfd,
 
 236 Kan. 710, 695 P.2d 1279 (1985) (citations omitted).
 

 Kansas no longer recognizes a cause of action for defamation
 
 per
 
 se. Rather, every claim for defamation requires proof of damage to the plaintiffs reputation.
 
 Gobin v. Globe Publ. Co.,
 
 232 Kan. 1, 6, 649 P.2d 1239 (1982). “[D]amage to one’s reputation is the essence and gravamen of an action for defamation. Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, either by libel or slander, under our law.”
 
 Id.
 

 
 *1502
 
 Plaintiff has claimed damage to his reputation, but there is no evidence to support the claim. Plaintiff’s employment was not adversely affected. His social relationships have continued unharmed. Since this incident, plaintiff has started a new business, and there is no evidence that the erroneous newspaper article has cost him any customers.
 

 Plaintiff named several witnesses who would testify as to the damage to his reputation. However, the depositions given by these witnesses provide no evidence to support plaintiff’s claim. As stated above, nearly all these witnesses testified that plaintiff’s reputation was not harmed and that they did not believe the article when they read it. One witness was confused initially, but had the matter cleared up for her in short order. The last witness, plaintiffs business partner, could testify only in a eonclusory fashion that plaintiffs reputation was harmed, but could provide no factual support for his opinion. He could name only two individuals he had heard discussing the article. Both of these individuals testified in deposition that they did not believe the article when they read it, and their opinions of plaintiff were not adversely affected by the article. The testimony of these witnesses, then, does not defeat the motions for summary judgment.
 

 In his response brief, plaintiff provided the affidavits of several other witnesses which state that the affiants believed the article when they read it. These affidavits stated that the affiants never saw a correction and/or that they believed plaintiffs reputation was substantially harmed. However, when the affiants were deposed, it became clear that they had no personal knowledge of plaintiff’s reputation. Indeed, most did not know who plaintiff was at the time the article was published. The others did not believe the article when they read it. None had ever heard anything negative about plaintiff due to the article. None had any personal knowledge of damage to plaintiffs reputation. Federal Rule of Evidence 56(e) provides in part that “affidavits shall be made on personal knowledge.” Because these affidavits are not based on personal knowledge, but rather on speculation, they do not create a genuine issue of material fact as to damage to plaintiffs reputation.
 

 In response to defendants’ motion for summary judgment, plaintiff for the first time contended that the City of Osborne and Chief Bose were negligent in failing to supply defendant Trail with copy of the written police report. Leaving aside the untimeliness of this claim, the court is unaware of any cause of action under Kansas law for negligent failure to provide written verification of information, although the court would agree that providing written reports would be a sound precautionary police practice to avoid mistakes such as that which occurred here.
 

 For the foregoing reasons, the court grants the defendants’ motions for summary judgment as to plaintiffs defamation claim.
 

 4. Invasion of Privacy/False Light Publicity
 

 Kansas recognizes an invasion of privacy action for false light publicity.
 
 Rinsley v. Frydman,
 
 221 Kan. 297, 303, 559 P.2d 334 (1977). Unlike defamation, which addresses damage to a plaintiffs reputation, the false light claim is based on a plaintiffs mental distress.
 
 Rinsley v. Brandt,
 
 700 F.2d 1304, 1307 (10th Cir.1983) (citing
 
 Time, Inc. v. Hill,
 
 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967)). Kansas has adopted Restatement (Second) of Torts § 652, which outlines the types of invasion of privacy, including false light publicity.
 
 Froelich v. Adair,
 
 213 Kan. 357, 358, 516 P.2d 993 (1973). In
 
 Rinsley v. Frydman,
 
 221 Kan. at 303, 559 P.2d 334, the Kansas Supreme Court cited to language from the draft version of § 652E. In final form, § 652E states:
 

 One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if
 

 (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
 

 (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
 

 
 *1503
 
 The Tenth Circuit has held that the Kansas courts would adopt the final version of Restatement § 652E.
 
 jRinsley,
 
 700 F.2d 1304.
 

 There remains a question, however, whether actual malice is an element of a false light publicity claim brought by a plaintiff who is a private individual, as opposed to a public figure. A caveat to § 652E states:
 

 The Institute takes no position on whether there are any circumstances under which recovery can be obtained under this Section if the actor did not know of or act with reckless disregard as to the falsity of the matter publicized and the false light in which the other would be placed but was negligent in regard to these matters.
 

 The caveat was put in place because of the unsettled state of First Amendment law on this issue. The Supreme Court held in
 
 Time, Inc. v. Hill,
 
 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), that the First Amendment requires an actual malice element in all false light publicity actions in which the publication deals with a matter of public concern.
 
 [4]
 
 However, the ruling of
 
 Hill
 
 was called into doubt when the Supreme Court, in
 
 Gertz v. Robert Welch, Inc.,
 
 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), departed from precedent and decided that a private individual alleging defamation against a media defendant need not prove actual malice to satisfy the First Amendment. Since
 
 Gertz,
 
 the Supreme Court has declined opportunities to revisit the ruling in
 
 Hill. Cantrell v. Forest City Publishing Co.,
 
 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974);
 
 Cox Broadcasting Corp. v. Cohn,
 
 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).
 

 The Kansas courts have not expressly considered whether actual malice is always an element in a false light claim. The issue has arisen in cases brought in federal court. In
 
 Rinsley v. Brandt,
 
 446 F.Supp. 850 (D.Kan. 1977), Judge Rogers concluded that because the false light cause of action is treated similarly to defamation, the
 
 Gertz
 
 standard would control, and only public figures need prove actual malice. In
 
 Rinsley,
 
 the court held the plaintiff was a public figure and, therefore, was required to prove actual malice.
 
 Rinsley,
 
 446 F.Supp. at 856-58. Eventually, the statements at issue in
 
 Rinsley
 
 were found not to be false, and the Tenth Circuit court of Appeals affirmed on that basis.
 
 Rinsley v. Brandt,
 
 700 F.2d 1304 (10th Cir.1983). Judge Saffels followed Judge Rogers’ conclusion in
 
 Tomson v. Stephan,
 
 696 F.Supp. 1407, 1413 (D.Kan.1988).
 

 Other states have addressed this issue and have reached mixed results, although the majority of states have required proof of actual malice.
 
 See, e.g., Schifano v. Greene County Greyhound Park, Inc.,
 
 624 So.2d 178, 180 (Ala.1993);
 
 Goodrich v. Waterbury Republican-American, Inc.,
 
 188 Conn. 107, 448 A.2d 1317, 1330 (1982);
 
 Lovgren v. Citizens First National Bank,
 
 126 Ill.2d 411, 418, 128 Ill.Dec. 542, 534 N.E.2d 987 (1989);
 
 Yancey v. Hamilton,
 
 786 S.W.2d 854, 860 (Ky.1989). Some courts have held as a matter of state law that actual malice is always an element of a false light claim.
 
 E.g., Colbert v. World Pub. Co.,
 
 747 P.2d 286, 291-92 (Okla.1987). Other states have relied on
 
 Hill
 
 in holding that an actual malice requirement is constitutionally necessary.
 
 E.g., Dodrill v. Arkansas Democrat Co.,
 
 265 Ark. 628, 590 S.W.2d 840, 845 & n. 9 (1979),
 
 cert. denied,
 
 4464 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980). Still other jurisdictions have relied on
 
 Gertz
 
 and held that a false light plaintiff need only show negligence.
 
 Wood v. Hustler Magazine, Inc.,
 
 736 F.2d 1084, 1092 (5th Cir.1984),
 
 cert. denied,
 
 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985);
 
 Dresbach v. Doubleday & Co.,
 
 518 F.Supp. 1285, 1288 (D.D.C.1981);
 
 Russell v. Thomson Newspapers, Inc.,
 
 842 P.2d 896 (Utah 1992);
 
 Crump v. Beckley Newspapers, Inc.,
 
 173 W.Va. 699, 320 S.E.2d 70, 88 (1983).
 

 This court concludes that a private individual must prove actual malice to state a claim for invasion of privacy based on false light publicity where the publication deals with a matter of public concern. The court’s reasoning is two-fold. First, the court does not wish to contradict applicable Supreme Court precedent which, although questioned, has never been overturned.
 
 See Dodrill,
 
 590
 
 *1504
 
 S.W.2d at 845 & n. 9. Second, the court believes the Kansas courts would join the majority of states that have considered the issue and would require a plaintiff in a case such as this to prove actual malice as a matter of state law.
 
 [5]
 
 The court relies in large part on the reluctance of the Kansas courts to create causes of action for negligently caused hurt feelings.
 
 See Colbert,
 
 747 P.2d at 291-92 (discussing the Oklahoma Supreme Court’s similar concerns). The Kansas courts have exhibited great caution in recognizing torts based on damage only to a plaintiffs emotional well-being.
 
 See Gobin,
 
 232 Elan, at 7, 649 P.2d 1239 (holding that damages for mental anguish in defamation claim are “parasitic” in that they are available only if the plaintiff can prove damage to his/her reputation);
 
 Grube v. Union Pacific R. Co.,
 
 256 Kan. 519, 522, 886 P.2d 845 (1994) (plaintiff can recover for negligent infliction of emotional distress only if he/she can prove some physical impaet/injury). Furthermore, absent an actual malice element, the false light claim becomes nothing more than defamation, but without proof of damage to the plaintiffs reputation.
 
 See Arrington v. New York Times Company,
 
 55 N.Y.2d 433, 449 N.Y.S.2d 941, 434 N.E.2d 1319 (1982),
 
 cert. denied,
 
 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983) (noting concern that false light action could potentially compromise freedom of the press by “sidestepping the safeguards which restrain the reach of traditional public defamation litigation”). The court believes the Kansas courts would not so undermine the substantive safeguards established in the defamation area.
 

 In this case, the plaintiff alleges both that Bose intentionally, willfully and maliciously gave false information to Trail and that Bose gave Trail correct information, but Trail intentionally, willfully and maliciously reported false information. Plaintiff contends both Bose and Trail acted with reckless disregard for the truth or falsity of the matters reported. There is no evidence to support these contentions. To show reckless disregard, the plaintiff must prove that the defendant “‘in fact entertained serious doubts as to the truth of [her] publication’ or acted with ‘a high degree of awareness of probable falsity.’”
 
 Masson v. New Yorker Magazine, Inc.,
 
 501 U.S. 496, 510, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991) (citations omitted). Proof of mere negligence is not enough.
 
 Id.
 
 Plaintiff here relies on speculation and irrelevant expert testimony.
 

 As for Chief Bose, the only evidence on record is that he correctly reported that plaintiffs car was stolen. At worst, he used ambiguous language, and there is nothing to suggest he did so intentionally or recklessly. Likewise, there is no evidence in the record to support the contention that Trail intentionally included false information in her article. Plaintiff also accuses Trail of reckless disregard for the truth. However, there is no evidence in the record to support a finding that Trail seriously doubted the truth of what she wrote or that she was highly aware that the information was probably false. In support of his assertion of reeldess disregard, plaintiff offers the expert witness testimony of Daryl Moen. Moen testified that Trail had acted in reckless disregard, which he defined as “not following basic journalistic practices in cases where you could cause damage to a person’s reputation.” This expert testimony is irrelevant to the issue of reckless disregard and would be inadmissible at trial because Moen applied his own definition of the term rather than the appropriate legal standard. Therefore, it does not create a genuine issue of fact as to actual malice.
 

 Because the court has concluded that actual malice is a necessary element of plaintiffs false light publicity claim and the plaintiff has no evidence to establish that element, the defendants are entitled to summary judgment on the invasion of privacy/false light publicity claim.
 

 5. Intentional Infliction of Emotional Distress
 

 Finally, the court addresses plaintiffs claim of intentional infliction of emotional distress, also known as the tort of outrage.
 
 *1505
 
 The cause of action requires proof of the following:
 

 (1) The conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant’s conduct and plaintiffs emotional distress; and (4) plaintiffs emotional distress must be extreme and severe.
 

 Anspach v. Tomkins Industries, Inc.,
 
 817 F.Supp. 1499, 1506 (D.Kan.1993),
 
 ajfd,
 
 51 F.3d 285 (10th Cir.1995) (quoting
 
 Roberts v. Saylor,
 
 230 Kan. 289, 292-93, 637 P.2d 1175 (1981)).
 

 There are two threshold requirements for the court to determine as a matter of law:
 

 (1) whether the defendant’s conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.
 

 Id.
 
 If reasonable people could differ as to whether the requirements are met, the matter is to be determined by the jury.
 
 Taiwo v. Vu,
 
 249 Kan. 585, Syl. ¶ 3, 822 P.2d 1024 (1991). Under the first threshold requirement, liability may be found only in those cases in which the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and intolerable in a civilized society.
 
 Roberts v. Saylor,
 
 230 Kan. at 293, 637 P.2d 1175. Liability does not arise “from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities.”
 
 Id.
 

 The second threshold requirement is that the plaintiffs emotional distress must be sufficiently severe, genuine and extreme that no reasonable person should be expected to endure it.
 
 Id.
 
 at 293-94, 637 P.2d 1175. The required threshold is necessarily high to separate meritorious claims from those based on trivialities or hyperbole.
 
 Rupp v. Purolator Courier Corp.,
 
 790 F.Supp. 1069, 1073 (D.Kan.1992).
 

 In this case, plaintiff has not presented any evidence from which a reasonable jury could determine either threshold has been met. Again, there is no evidence that defendant Trail knew her article was erroneous at the time she wrote it. The court concludes that regardless of whether Trail met the standards of good journalistic practices, her conduct was not so extreme and outrageous as to permit recovery.
 
 Hanrahan v. Horn,
 
 232 Kan. 531, 536-37, 657 P.2d 561 (1983). As for Chief Bose, again, there is no evidence to support the claim that he gave incorrect information to Trail, much less that he did so intentionally or recklessly. At worst, he used ambiguous language in describing the theft, and there is no evidence that he did so with any intent to deceive. There is no basis in the evidence to support a conclusion that Bose’s conduct was so extreme and outrageous as to go beyond the bounds of decency.
 

 Plaintiff has also failed to present any evidence of the type of emotional distress which permits recovery. Plaintiff has not sought professional attention for either mental problems or physical symptoms attributable to this incident. He has not missed any work. His social relationships are unaltered. In contesting the motion for summary judgment, plaintiff relies solely on Trail’s statement in “Anatomy of a Mistake” that plaintiff was “put through needless pain and anxiety.” The court does not doubt that plaintiff was unhappy and upset about the mistake in the article, but there is no evidence that he suffered such genuine and extreme emotional distress that no reasonable person would be expected to endure it. On the contrary, this “outrage” claim represents precisely the type of triviality for which summary judgment is appropriate.
 

 Because the court has determined that summary judgment is appropriate based on the matters discussed above, the court need not address the defendants’ remaining arguments.
 

 IT IS BY THIS COURT THEREFORE ORDERED that the motions for summary judgment (Doc’s 23 and 26) are hereby granted.
 

 
 *1506
 
 IT IS FURTHER ORDERED that defendant’s motion to dismiss (Doc. 21) is moot.
 

 [1]
 

 . Plaintiff has attempted to controvert many of the facts in this case. However, his statements are not responsive to the statements of fact set forth by the defendant and/or are not supported by the deposition testimony and other evidence in the case.
 
 See
 
 D.Kan. Rule 56.1.
 

 [2]
 

 . Plaintiff's counsel misidentifies the suspect as Larry Joe Cantrell. (Plaintiff's Memorandum of February 29, 1995, at 5).
 

 [3]
 

 . Plaintiff originally filed Ms defamation action in Sedgwick County District Court. Venue was changed to Osborne County, and plaintiff dismissed without prejudice. He then moved to Burlington, Colorado, and filed the rnstant action m federal court. Defendants suspect the move is a sham, but have not moved for dismissal on that basis, and there is no evidence from which the court could find that defendant did not reside m Colorado at the time he filed tMs diversity action.
 

 [4]
 

 . There is no question that investigations of crime are matters of public concern.
 
 See Rosa-nova v. Playboy Enterprises, Inc.,
 
 580 F.2d 859, 861 (5th Cir.1978).
 

 [5]
 

 . The false light cause of action is controversial and has been rejected altogether by some states. See Bryan R. Lasswell,
 
 In Defense of False Light: Why False Light Must Remain a Viable Cause of Action,
 
 34 S.Tex.L.Rev. 149, 162 (1993) and cases cited therein.